RAYMOND GARRETT v. STATE.

No. A-9914.   Feb. 25, 1942.

(123 P. 2d 283.)

Sigler & Jackson, of Ardmore, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, Raymond Garrett, was charged by information in the district court of Carter county, Oklahoma, on December 29, 1939, with the crime of receiving stolen property, was tried, convicted, and sentenced to serve a term of five years in the State Penitentiary and to pay a fine of $250, from which judgment and sentence he appeals to this court.

The only contention presented by counsel for defendant in his brief is that defendant did not have that fair and impartial trial guaranteed him under the Constitution and statutes of this state, because of misconduct of the court in the presence of the jury and improper argument by counsel for the state.

The state called Raymond Waidner as a witness. He claimed, and was granted immunity. He then stated that he knew nothing about the offense with which defendant is charged. The state pleaded surprise and hostility of the witness. During the cross-examination of the witness, which the court allowed the state, the following occurred:

"Q. (By Mr. Brett, Asst. County Attorney) Did you go to the Raymond Garrett place on or about the 2nd day of December, 1939? A. No, I didn't. By the Court: Did you sell him any tires? A. No, sir. By the Court: You deny all that? (At this point the court was apparently attracted to Mr. James C. Mathers, who was sitting in the courtroom, because of the following remarks:) Mr. Mathers, you keep your head still. You can't sit in the court and do that. This man is capable of testifying. I will send you to jail if there is any more such conduct."

In the case of People v. Yates, 339 Ill. 421, 171 N. E. 557, 558, where the trial judge's attention was brought to the fact that a spectator in the courtroom was nodding her head to a witness for defendant on the witness stand,

the court cautioned the woman not to shake her head one way or another. Counsel for defendant urged that this constituted prejudicial error, and the Supreme Court of Illinois held:

"We fail to see any force in this argument. The woman whose conduct brought forth the complaint by the juror was not a witness in the case, and, so far as disclosed by the record, was merely an onlooker. It does not appear whether she was attempting to influence the witness favorably or unfavorably to the defendant. Having had the matter brought to his attention, it was the duty of the court to warn her against such conduct, and we fail to see where such warning could have prejudiced any of the rights of plaintiff in error."

Mr. Mathers did not testify in the case and was not one of the interested attorneys. So far as the record discloses, he was merely a bystander, who had accompanied two of defendant's witnesses from Oklahoma City to Ardmore on the day previous. It is not stated in what manner Mr. Mathers' gestures were being used to affect the testimony of the witness. This matter will be considered in connection with other matters which arose during the course of the trial. We deem it proper to state, however, that this circumstance, standing alone, was not sufficient to constitute reversible error.

It is next urged that the court committed reversible error because of threatening statements made to counsel for defendant in the presence of the jury.

Raymond Farrias, called as a witness by the state, testified, without claiming immunity, that he and Waidner had stolen certain property and sold it to defendant. While Farrias was on the witness stand, the following occurred:

"By the Court: Just one moment, did you take this witness out? (The officer indicated that he did.) Go ahead. * * * Q. (By attorney for defendant) You would

have testified exactly like Raymond Waidner testified if they hadn't taken you out of the courtroom? By the Court: Now, then, I will not let him testify as to that. (At this point Mr. Sigler dictated the following in a low voice out of the hearing of the jury to the Reporter:) (By Mr. Sigler, of Counsel for Defendant: Defendant expects to show by this witness that he would have testified as Raymond Waidner testified if it had not been for the fact that he was taken out of the courtroom and the officers threatened him.) By the Court: All right, go ahead and ask him, I am going to make you prove that. By Mr. Sigler: Well, maybe I can't prove it. By the Court: Did the officers take you out and threaten you? Now, then, you stated in the record there that that would be what the proof would be, I will probably hold you in contempt unless you can prove that. By Mr. Sigler: I said I expected to prove it by him, if the court will let me ask him. By the Court: Go ahead and ask him. Mr. Bailiff, will you take the jury out."

In Whittenburg v. State, 46 Okla. Cr. 380, 287 P. 1049, this court held:

"If the conduct of counsel for defendant is improper, the court must excuse the jury before administering a rebuke or threatening to fine or imprison him for contempt." Kelley v. State, 31 Okla. Cr. 51, 236 P. 915; McSpadden v. State, 8 Okla. Cr. 489, 129 P. 72.

Absolute fairness should characterize every word and action of a judge. No judge has a right to indicate to the jury, by word or action, his opinion of the merits of any case being tried before him, or to in any way indicate his opinion as to the credibility of any witness examined. Harrison v. State, 11 Okla. Cr. 14, 141 P. 236; Reed v. State, 5 Okla. Cr. 365, 114 P. 1114; Koontz v. State, 10 Okla. Cr. 553, 139 P. 842, Ann. Cas. 1916A, 689.

In Smith v. State, 12 Okla. Cr. 513, 159 P. 941, this court stated that it is highly prejudicial for the trial judge to reprimand counsel for defendant in the presence of the jury:

It is further contended that the argument of the county attorney was grossly improper and prejudicial.

All of the state's argument to the jury was not reported, but the following was put in the record at the time of the argument:

"By Mr. Sigler, of Counsel for Defendant: The assistant county attorney, in his argument to the jury, stated that Buck Garrett was dead, Bud Ballew was dead and that Dow Brazel was dead and that the old pistol toting, pistol whipping days are gone. We move the court at this time to declare a mistrial because of the statements of the county attorney above referred to for the reason that said statements are prejudicial to the defendant's rights, and are statements concerning matters that should not be considered in this trial. By the Court: Overruled. By Mr. Sigler: Exception. By the Court: Gentlemen of the jury, you are not to consider those remarks, they are no part of the evidence in this case and have nothing to do with this case. (Further on in his argument Mr. Brett made certain other statements which counsel for defendant desired to make a record of.) By Mr. Sigler: I desire to make a record as follows, in view of the absence of the reporter awhile ago. We object to the statement made by the assistant county attorney that it wasn't necessary for Mr. Pruiett in his balmy days to frame an alibi, that he came here to frame an alibi. There is no testimony that he framed an alibi or that anybody framed an alibi in this case. By the Court: Let that objection be overruled. By Mr. Sigler: Exception. (Then later on in Mr. Brett's argument the following statement was made:) By Mr. Brett, Assistant County Attorney: And Raymond wiggles out with his good counsel — (interrupted)

"By Mr. Sigler: The defendant objects to said remark for the reason that there is no testimony in this case that I have done anything crooked in this case. He insinuated awhile ago that an alibi was framed. By the Court: Overruled. By Mr. Sigler: Exception. * * * By Mr. Sigler: (out of the hearing of the jury.) Comes now

the defendant and moves the court to instruct the jury that that part of the argument of the assistant county attorney reflecting on counsel in this case, should be disregarded and that that part which reflected on Moman Pruiett and Jim Mathers should be disregarded for the reason that there is no showing that they are counsel in this case, they have nothing to do with the case whatsoever and Moman Pruiett is only appearing as a witness and Jim Mathers had nothing to do with the case at all. By the Court: Counsel has a right to discuss the testimony of Moman Pruiett who appeared as a witness, so far as counsel for the defendant is concerned, there is no reflection on the counsel in this case. He only referred to counsel as counsel."

It is stated in Chesser v. State, 63 Okla. Cr. 84, 73 P. 2d 191, 192, that:

"Ordinarily, error cannot be predicated upon mere unexplained excerpts from the remarks of counsel to the jury. Enough must appear of record to advise the appellate court of what preceded the alleged objectionable remarks and their meaning to be deduced from the context, and whether or not they were invited or provoked by remarks made by opposing counsel."

The county attorney should not make statements for the purpose of creating prejudice in the minds of the jury. The excerpts set out above are sufficient to show that the county attorney was making an appeal to the prejudices of the jury. It is apparent that the assistant county attorney in his argument was making statements wholly outside of the record, and which were not justified from anything shown in the record. There is no statement by the court in ruling upon the objections made by counsel to the prosecutor's argument which would tend to explain or show any justification for the remarks made by the prosecutor. This court has adopted a liberal rule in the matter of the argument of counsel, but where facts are stated by counsel which are calculated to prejudice

the jury where they are not borne out by the evidence, they may be sufficient to reverse a judgment. We shall consider these improper statements in connection with the statements made by the court hereinbefore discussed.

This case involves the alleged purchase of certain automobile tires for a consideration of $16 by the defendant from two men who had stolen them from a filling station in the city of Ardmore. While the proof of the state was not sufficient to justify this court in stating that the proof of guilt was conclusive, owing to the fact that no part of the stolen property was found in the possession of the defendant, yet, in the absence of prejudicial errors, the same would have been sufficient to sustain the conviction.

We have carefully considered this record and all of the facts and circumstances surrounding the case as shown by the record. So far as is disclosed by the evidence, the defendant had never been convicted for any offense. It is clear to us that the statements made by the court and by the prosecutor in his closing argument were inflammatory and prejudicial. The fact that the jury, in assessing the punishment, gave the defendant the maximum penalty fixed by the law for this offense shows in itself that prejudice existed, as there was nothing in the record which would, in any way, justify the exaction of this punishment.

Article 2, § 6 of the Constitution of Oklahoma, O. S. 1941, provides that right and justice shall be administered without sale, denial, delay, or prejudice.

We cannot escape the conclusion that the fair and impartial trial to which the defendant was entitled was prejudiced by the remarks of the court and the county attorney. We may remark here that the state only demands the punishment of a citizen when his guilt has

been clearly established according to the forms and rules of law prescribed for ascertaining his guilt. It is not to shield the guilty, but to protect the innocent, that courts are steadfast in upholding the forms and rules of law by which it may be lawfully determined who are guilty. A fair trial is a legal trial, or one conducted in all material things in substantial conformity to law. The state does not expect and will not tolerate the use of any unfair means or methods to secure the conviction of one charged with crime. If a conviction of the defendant cannot be had fairly, then the state does not ask for a conviction, because such a conviction would be tainted with, if not founded upon, injustice and wrong.

The trial judge is as much a judge for the defendant as for the state, and is supposed to sit fairly and impartially on the rights between the state on the one side and the defendant on the other. The court should be very careful to refrain from saying anything which might convey to the jury the impression that the court had an opinion as to the guilt or innocence of the defendant, or as to the credibility of a witness. Under our system of criminal jurisprudence, the jury are the exclusive judges of the weight and credibility to be given to the testimony of a witness. When the trial court reprimanded defendant's counsel in the presence of the jury, it may have had great influence on the jury in returning the verdict that it did, as jurors generally regard the presiding judge with great respect and give much weight to his expressions and opinions.

For the reasons hereinabove given, the judgment of the district court of Carter county is reversed and said cause is remanded for a new trial.

BAREFOOT, P. J., and DOYLE, J., concur.